# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 09, 2023

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

FILED BY____JE____D.C.

Mar 9, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Appeal Number:  21-11937-CC
Case Style: Lynn Hamlet v. Officer Hoxie
District Court Docket No: 2:18-cv-14167-DMM

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Clerk's Office Phone Numbers

| | |
|---|---|
| General Information | 404-335-6100 |
| New / Before Briefing Cases | 404-335-6135 |
| Cases in Briefing / After Opinion | 404-335-6130 |
| Cases Set for Oral Argument | 404-335-6141 |
| Capital Cases | 404-335-6200 |
| Attorney Admissions | 404-335-6122 |
| CM/ECF Help Desk | 404-335-6125 |

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-11937

————————————

LYNN HAMLET,

Plaintiff-Appellant,

*versus*

MARTIN CORECTIONAL INSTITUTION,
et al.,

Defendants,

OFFICER HOXIE,

Defendant-Appellee.

————————————

ISSUED AS MANDATE:  03/09/2023

2                                                    21-11937

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:18-cv-14167-DMM

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion is-
sued on this date in this appeal is entered as the judgment of this
Court.

Entered: November 9, 2022

For the Court: DAVID J. SMITH, Clerk of Court

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11937

_____

LYNN HAMLET,

Plaintiff-Appellant,

*versus*

MARTIN CORECTIONAL INSTITUTION,
et al.,

Defendants,

OFFICER HOXIE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:18-cv-14167-DMM

_____

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, and GRANT, Circuit Judges.

GRANT, Circuit Judge:

Lynn Hamlet alleges mistreatment while he was an inmate at Martin Correctional Institution.  Hamlet sued the prison and several of its officials, alleging violations of his rights under the First, Fourteenth, and Eighth Amendments to the United States Constitution.  Our narrow task is to ask whether he has specifically alleged facts that—if true—would violate his rights under clearly established law.  After careful review of the record and with the benefit of oral argument, we do not believe that he has done so.  We therefore affirm the judgments of the district court.

## I.

We are reviewing two orders in this appeal.  The first is the district court's sua sponte dismissal of Hamlet's First and Fourteenth Amendment claims under 28 U.S.C. § 1915(e)(2)(B)(ii), which requires district courts to dismiss proceedings in forma pauperis that fail to state a claim on which relief may be granted.  The second is the district court's grant of summary judgment on Hamlet's Eighth Amendment claim against Officer Hoxie.  For both orders, we review the decision of the district court de novo,

accepting his allegations as true for his First and Fourteenth Amendment claims and viewing all disputed facts and reasonable inferences in the light most favorable to Hamlet for his Eighth Amendment claim. *See Hughes v. Lott*, 350 F.3d 1157, 1159–60 (11th Cir. 2003); *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014).[1]

## II.

Hamlet is an elderly, diabetic man who was an inmate at Martin Correctional Institution in southern Florida. As he tells it, his troubles began with a long-running dispute with Officer K. Shultheiss and her husband Lieutenant A. Shultheiss, both of whom worked at the prison. He claims that the Shultheisses had engaged in a campaign of targeted harassment against him, including by filing a false disciplinary report. Hamlet had filed grievances about this alleged harassment years before any of the events giving rise to this case.

In April 2018, Hamlet had recently come out of a diabetic coma and did not have an appetite, so he saved a small bag of rice from the prison chow hall. When Officer K. Shultheiss discovered that he had taken food, he claims that she called him a "bitch." Hamlet, in turn, "told her what ever she call me it's back to her." Officer K. Shultheiss then said that Hamlet had called *her* a "bitch," wrote a disciplinary report saying that he had disrespected an

---

[1] We also construe Hamlet's pleadings liberally because he was then litigating pro se. *See Hughes*, 350 F.3d at 1160.

official, and had him placed in disciplinary confinement.  Hamlet sought an administrative remedy and signed the paperwork to sue the prison, Officer K. Shultheiss, and two other prison officials.  A few weeks later, this lawsuit was formally docketed—then limited to a complaint about the allegedly fabricated disciplinary report.

About a week into Hamlet's confinement, he received a hearing about Officer K. Shultheiss's disciplinary report—a hearing over which Lieutenant A. Shultheiss presided.  After that hearing, Hamlet's time in disciplinary confinement was extended.[2]

The day after the hearing, Officer Hoxie escorted Hamlet to the handicap shower, which was designed for seated showering.  While Hamlet showered, the enclosure began to fill with ankle-deep water.  Meanwhile, a potato chip bag filled with feces and urine floated up and bumped against his ankles, which had open wounds—a diabetes-related condition from scratching his dry skin at night.  Hamlet asked Hoxie to let him out, but Hoxie responded, "you did it," apparently accusing him of being the source of the feces and urine.  Hoxie briefly let Hamlet out, but then changed his mind and shoved him back in the shower.  In the end, Hoxie left him in the shower for roughly 30 or 40 minutes.  Hamlet tried to move away from the urine and feces, but says he was ultimately

---

[2] An exhibit offered by Hoxie establishes that Hamlet received an additional 22 days in disciplinary confinement (for a total of 30 days) as well as "30 days loss of GT," presumably referring to good time credits.  But at the time of his pleading, Hamlet only alleged that he was "put in confinement" without further explanation.

unable to prevent them from getting into his wounds.  He also claims that the problems did not end in the shower, alleging that Hoxie also took the sheets and clean clothes from his cell and threw them out in the hallway.

Once back in his cell, Hamlet says he still had feces in his open wounds from the shower, but he did not tell Hoxie or anyone else.  Instead, he resorted to an attempt to clean his wounds with his bare hands and toilet water.  He did not succeed.  Though Hamlet became sick the next morning, he still did not tell anyone that he had feces in his wounds or ask anyone for anything to help clean himself, even though Hoxie ordered that he not be allowed to take a shower that week.

Three days later, Hamlet filed a grievance with the Warden about the shower incident.  The grievance complained that Hoxie had blamed Hamlet for the feces in the shower, that Hoxie had thrown out Hamlet's sheets, and that Hamlet had not been allowed to shower since the incident.  It made no claims that Hamlet was sick or had feces on his body.  The next day, he received medical attention for hypoglycemia.  But nothing in the records of that visit indicates that he had wounds or feces on his body at that time.

Hamlet got progressively sicker over the next several days and was eventually hospitalized.  By then, he had lost control of his bowels and defecated himself; he was covered in feces and urine when he was admitted to the hospital, where he received a shower. He was in-and-out of the hospital for some time before a bacterial

infection required heart valve surgery; he ultimately spent months in the hospital and suffered serious complications.

Hamlet originally filed this lawsuit to litigate Officer K. Shultheiss's allegedly fabricated disciplinary report. He stopped litigating the suit while he was in the hospital, so his case was dismissed for lack of prosecution. Once Hamlet explained his situation, the court vacated its dismissal of the lawsuit. Magistrate Judge Reid then found the original § 1983 complaint deficient and ordered Hamlet to amend it. Hamlet did so, and he also expanded the scope of the complaint to include both his allegations that Lieutenant A. Shultheiss had improperly presided over his hearing and his allegations that Hoxie had exposed him to the feces and urine in the shower.

The magistrate judge construed Hamlet to be alleging violations of his First, Eighth, and Fourteenth Amendment rights. She recommended that the Eighth Amendment claim against Hoxie be allowed to proceed, but that the rest of the complaint be dismissed without leave to amend under § 1915(e)(2)(B)(ii). She reasoned that Hamlet's First Amendment retaliation claim was conclusory and vague, and that his Fourteenth Amendment claim did not identify a protected liberty interest under the Due Process Clause. The district court adopted the magistrate judge's recommendations, dismissing all of Hamlet's claims without leave to amend except for the Eighth Amendment claim against Hoxie.

After discovery, the district court granted Hoxie's motion for summary judgment on the Eighth Amendment claim. The

court rejected Hamlet's arguments on the merits, determining that—even if everything Hamlet alleged were true—Hamlet had not suffered objectively extreme conditions of confinement. The court also found that Hamlet had alleged no facts showing that Hoxie was subjectively aware that he faced any risk of infection from the shower. Hamlet appealed and obtained pro bono counsel.

## III.

We begin with Hamlet's Eighth Amendment Claim against Officer Hoxie. We agree with the district court's grant of summary judgment. Hoxie is entitled to qualified immunity because his alleged actions do not violate clearly established Eighth Amendment law.[3]

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition applies to the conduct of state government officials through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 764 & n.12 (2010). We assess Eighth Amendment challenges to unconstitutional conditions of confinement with a two-prong inquiry. *Thomas v. Bryant*, 614 F.3d 1288, 1303–04 (11th Cir. 2010).

---

[3] The district court did not reach the question of qualified immunity. But we may affirm a grant of summary judgment "on any ground that finds support in the record" and qualified immunity was briefed by both parties. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (quotation omitted).

The first prong is an objective inquiry into whether the conditions are "sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities." *Id.* at 1304 (quotations omitted). "Extreme deprivations" are required to make out a conditions of confinement claim. *Id.* The second prong is a subjective inquiry into whether "the official had a sufficiently culpable state of mind." *Id.* (quotation omitted). Only "subjective deliberate indifference to the substantial risk of serious harm caused by such conditions" satisfies this prong. *Id.* at 1307.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, the official must first prove that he was acting within the scope of his discretionary authority when the allegedly unlawful conduct took place. *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015). Hoxie calls it "undisputed" that he was acting within his discretionary authority, and Hamlet does not contest this characterization.

Once an official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to "demonstrate (1) that the facts show that the official violated the plaintiff's constitutional rights and (2) that the law clearly established those rights at the time of the alleged misconduct." *Id.* at 1352–53 (quotations omitted). If the defendant's conduct does

not violate clearly established law, then that alone is sufficient grounds for a court to grant qualified immunity to the defendant. *See Pearson v. Callahan*, 555 U.S. 223, 242 (2009). The law "does not require a case directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7–8 (2021) (quotation omitted).

Here, we consider the narrow question of whether Hamlet alleged conduct that violated clearly established Eighth Amendment law. He did not. Clearly established law does not show that a relatively brief exposure to urine and feces in the shower is an objectively extreme deprivation of the minimal civilized measure of life's necessities.

The case cited by Hamlet that comes closest to his allegations is *Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015).[4] In *Brooks*, the plaintiff alleged that he was wearing waist-chains while receiving medical treatment, that a guard refused to lower his chains to allow him to use the bathroom, that he consequently

---

[4] Hamlet also relies heavily on *Bilal v. Geo Care, LLC*, a case with similar facts to *Brooks* where we found a violation of the Fourteenth Amendment when a civilly confined man was forced to sit in his own excrement for three hours. *See* 981 F.3d 903, 909, 915 (11th Cir. 2020). But *Bilal* was decided after the alleged 2018 incident in the shower, so it is "not relevant to determining whether the law was clearly established at the time" that Hoxie allegedly acted. *See Gaines v. Wardynski*, 871 F.3d 1203, 1212 n.11 (11th Cir. 2017). In any event, *Bilal* would not change our analysis.

defecated himself, and that he was forced to sit in his own excrement for two days while the guard mocked him and prevented nurses from cleaning him. *See* 800 F.3d at 1298, 1300. We determined that the exposure to feces in *Brooks* was a "deprivation of basic sanitary conditions" that violated the Eighth Amendment. *Id.* at 1304–05.

Hamlet argues that *Brooks* clearly establishes that *any* "contact and close proximity with excrement" creates "an objectively unreasonable risk of serious damage" to a prisoner's "future health" and therefore violates the Eighth Amendment. *Id.* at 1303–04 (quotation omitted). But this argument misunderstands the nature of our qualified immunity analysis. The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021). We cannot remove a line of dicta from its context and abstract it to the highest possible level. Instead, we must look at our case law and ask if the governing rule's "contours" are "so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 11 (quotations omitted).

*Brooks* does not clearly establish that Hamlet's alleged exposure to feces and urine in the shower objectively deprived Hamlet of the minimal civilized measure of life's necessities. The alleged exposure in the shower here was different in both degree and kind from the extreme exposure in *Brooks*.

The most obvious difference is the duration of the exposure. Hamlet claims to have been in proximity to the bag of feces and urine for 30 to 40 minutes—not two days. But just as importantly, the nature of Hamlet's exposure to feces was less extreme. In *Brooks*, feces was continuously pressed against the plaintiff's body. *See* 800 F.3d at 1303–04. Here, the bag of feces and urine are alleged to have repeatedly floated up to Hamlet's ankles in the shower, suggesting intermittent rather than consistent contact.[5]

Furthermore, unlike the plaintiff in *Brooks*, Hamlet had means to mitigate the severity of his exposure to the urine and feces. Hamlet's shower naturally involved access to running water. And Hamlet was sitting on a seat in the handicap shower and testified that he could have placed his feet on top of the seat. In this procedural posture, we do not question Hamlet's claim that he nonetheless failed to avoid contact with the feces. But access to running water and the possibility of avoiding contact with feces are important considerations in assessing the objective extremity of the conditions of Hamlet's confinement, and these considerations were not present in *Brooks*. Nor does Hamlet allege that Hoxie was "[l]aughing at and ridiculing" him for being forced to remain in contact with the feces or that Hoxie forbade others from helping

---

[5] Hamlet's appellate briefing argues that the feces dissolved in the water, and that the contaminated water infected Hamlet's wounds. But under either explanation for how feces ended up in Hamlet's wounds, having feces in proximity to a person in a shower is still different from being forced to defecate oneself and sit in the excrement.

12                        Opinion of the Court                      21-11937

him—further distinctions from *Brooks*.  *See Brooks*, 800 F.3d at
1307, 1303.

In short, the plaintiff in *Brooks* alleged that he was "forced
to lie in direct and extended contact with his own feces without any
ability to clean himself" for "a full two days" while the defendant
mocked the plaintiff and prevented him from being cleaned.  *Id.* at
1305.  Intermittent contact with feces for 30-40 minutes with access
to running water is simply a different constitutional question.
*Brooks* does not place that question "beyond debate."  *See Rivas-
Villegas*, 142 S. Ct. at 8 (quotation omitted).[6]

In another effort to frame his case as more extreme than
*Brooks*, Hamlet tries to define his exposure to feces as lasting for
days, not minutes.  He argues that he was forced to spend days (and
perhaps weeks) with feces festering in his open wounds, and that
the many days of exposure should be the relevant period for our
analysis, not just the exposure in the shower.

---

[6] Other cases cited by Hamlet also involved longer and more direct exposure
to unsanitary conditions than this case, often accompanied by deprivation of
water and other prolonged deprivations of basic necessities.  *See, e.g.*,
*Chandler v. Baird*, 926 F.2d 1057, 1063, 1066 (11th Cir. 1991) (reversing a
summary judgment finding no Eighth Amendment violation when the
plaintiff alleged that he was locked in a freezing cold cell covered in filth for
multiple days without running water); *Novak v. Beto*, 453 F.2d 661, 665 (5th
Cir. 1971) (describing cases with prolonged confinement in filthy cells lacking
"basic elements of hygiene," often involving  freezing cold temperatures and
a lack of toilet for an extended period).

To be sure, framing Hamlet's injury as several days with feces festering in open wounds would impact our analysis of whether his injury satisfied the first prong of the Eighth Amendment inquiry under clearly established law. But to state an Eighth Amendment conditions of confinement claim, Hamlet also must show that Hoxie had "subjective deliberate indifference to the substantial risk of serious harm." *Thomas*, 614 F.3d at 1307. Nothing in this record suggests that Hoxie—or anyone but Hamlet himself, for that matter—even knew that he had wounds on his ankles, much less that he had feces stuck to his wounds for days after his shower. Hamlet admits that he did not ask Hoxie for anything when he was led back to his cell after the shower, and he never suggests that he told Hoxie that he had feces in his wounds. Nor did he mention his wounds or any remaining feces on his body in the grievance he filed with the Warden three days after the shower. And the nurses' report from Hamlet's treatment for hypoglycemia—taken the day after the alleged shower incident— likewise did not note any wounds or feces on Hamlet's body, suggesting that, at the absolute minimum, any wounds or feces were not so obvious that Hoxie would have noticed them. Under our Eighth Amendment analysis, Hoxie could not be "subjectively culpable" for creating conditions of which he was completely unaware. So whether because a 30-to-40-minute exposure is not objectively extreme under clearly established law, or because the record does not support an inference that Hoxie was subjectively aware of feces in Hamlet's wounds after the shower, Hamlet's claim fails.

## IV.

We now turn to Hamlet's appeal of the district court's § 1915 order.  Hamlet argues that the court should have allowed two of the dismissed claims to proceed: a First Amendment retaliation claim about the allegedly fabricated disciplinary report, and a Fourteenth Amendment Due Process claim about Lieutenant A. Shultheiss allegedly adjudicating his own wife's report against Hamlet.  We are not persuaded.[7]

To begin, we agree with the district court that Hamlet alleged retaliation against his constitutionally protected filing of grievances, but that both the original and amended complaints were too vague and conclusory to survive a § 1915 screening.[8]

---

[7] Hamlet's appellate briefing describes the facts of the hearing mainly based on his sworn testimony during discovery for his Eighth Amendment claim, testimony that was given long after the district court's § 1915 order.  The district court's order, however, can only be analyzed based on the information in the record at that time.  Seemingly realizing that this limitation is fatal to his case, Hamlet requested at oral argument that this Court grant him leave to amend his complaint a second time to better plead his First and Fourteenth Amendment claims.  He has not sought post-judgment leave to amend his complaint before the district court, and we will not consider the question in the first instance.  *See, e.g., Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1266 (11th Cir. 2019).

[8] We note that the magistrate judge specifically instructed Hamlet that his amended complaint would "be the operative pleading considered in this case," that "only the claims listed therein will be addressed by the Court," and that "[f]acts alleged and claims raised in plaintiff's previous filings that are not

With the generosity due to a pro se plaintiff, a court could piece together allegations that the Shultheisses called Hamlet names because he had filed complaints against them, and that Officer K. Shultheiss falsely filed a report claiming that Hamlet called her a "bitch."  But these are "naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets and quotations omitted).  At no point does Hamlet describe in any detail conduct that, if true, would show that he "suffered adverse conduct that would likely deter a person of ordinary firmness" from engaging in protected speech, as is necessary to bring a retaliation claim.  *See Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011).

Hamlet's Fourteenth Amendment claim faces an even more fundamental problem: his pleadings did not allege that his hearing led to the deprivation of a protected liberty interest.  A prisoner only has a right to due process when "a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court" or when the state removes a consistently bestowed benefit in a way that creates atypical hardship.  *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999).  Disciplinary confinement does not per se implicate a protected liberty interest if it "does not present a dramatic departure from the basic conditions" of the sentence.  *Sandin v. Conner*, 515 U.S. 472,

---

specifically repleaded in the amended complaint will be considered abandoned and voluntarily dismissed."  But the complaints are deficient whether read together or in isolation.

16                    Opinion of the Court                    21-11937

485–86 (1995) (holding that 30 days in disciplinary segregation did not trigger any due process rights).

Hamlet's complaint alleges that he was "put in confinement" after his hearing.  But that is all; he alleges nothing about the conditions or duration of his confinement that would rise above the bar in *Sandin* and entitle him to due process.  That alone resolves his Due Process claim.

*       *       *

Hamlet has not adequately alleged a violation of clearly established law.  We **AFFIRM** the judgments of the district court.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 09, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  21-11937-CC
Case Style:  Lynn Hamlet v. Officer Hoxie
District Court Docket No:  2:18-cv-14167-DMM

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system,
unless exempted for good cause. Although not required, non-incarcerated pro se parties are
permitted to use the ECF system by registering for an account at www.pacer.gov. Information
and training materials related to electronic filing are available on the Court's website. Enclosed
is a copy of the court's decision filed today in this appeal. Judgment has this day been entered
pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP
41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for
filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is
timely only if received in the clerk's office within the time specified in the rules. Costs are
governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for
attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested
Persons a complete list of all persons and entities listed on all certificates previously filed by
any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be
reheard must be included in any petition for rehearing or petition for rehearing en banc. See
11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation for time spent on the appeal no later than 60 days after either issuance of mandate
or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via
the eVoucher system. Please contact the CJA Team at (404) 335-6167 or
cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher
system.

Pursuant to Fed.R.App.P. 39, <u>costs taxed against the appellant</u>.

Please use the most recent version of the Bill of Costs form available on the court's website at <u>www.ca11.uscourts.gov.</u>

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call <u>Carol R. Lewis, CC</u> at <u>404-335-6179</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs